[Cite as *Meehan v. Mardis*, 2019-Ohio-4075.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| LAWRENCE E. MEEHAN, | : | APPEAL NO. C-180406 |
| Plaintiff-Appellant, | | TRIAL NO. A-1602670 |
| vs. | : | *O P I N I O N.* |
| JOHN HOWARD MARDIS, | : | |
| and | : | |
| LONNIE G. HORN, | | |
| Defendants-Appellees, | : | |
| and | | |
| TBG PROPERTIES, L.L.C., et al., | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  October 4, 2019

*Hemmer DeFrank Wessels, P.L.L.C.*, and *Scott R. Thomas*, for Plaintiff-Appellant,

*Wood & Lamping, L.L.P.*, and *Dale Stalf*, for Defendant-Appellee John Howard Mardis,

*Mulvey & Muller, L.L.C.*, and *William J. Mulvey,* for Defendant-Appellee Lonnie G. Horn.

**CROUSE, Judge.**

{¶1}    Plaintiff-appellant Lawrence E. Meehan has appealed the judgment of the trial court, arguing in one assignment of error that the court erred in granting partial summary judgment in favor of defendants-appellees John Howard Mardis and Lonnie G. Horn.  For the following reasons, we affirm in part, reverse in part, and remand the cause for further proceedings.

### *Factual Background*

{¶2}    Lawrence Meehan and John Mardis were 50 percent co-owners of Mardis and Meehan Construction, Inc., ("MMCI").  Lonnie Horn is a member of Artistic Tile and Marble LLC ("Artistic Tile").  Meehan alleges that Mardis diverted MMCI money and property to Horn and Artistic Tile, as part of a secret profit-sharing agreement between Mardis and Horn.

{¶3}    Meehan initially filed suit against the defendants on November 16, 2012.  On May 8, 2015, the parties agreed to dismiss the suit without prejudice.  Meehan filed the current complaint on May 6, 2016.

{¶4}    Civ.R. 54(B) provides that when more than one claim for relief is presented in an action, the court may enter final judgment on fewer than all of the claims if it determines that there is no just cause for delay.

{¶5}    The trial court granted partial summary judgment in favor of Mardis and Horn, ruling that any claims premised upon actions or omissions that occurred

prior to November 16, 2008[1], were barred by the four-year statute of limitations contained in R.C. 2305.09.

{¶6}    The court found there was "no just cause for delay," and that even if Meehan succeeded at trial on his remaining claims (those claims premised on acts or omissions which occurred after November 16, 2008) he would likely appeal the court's grant of partial summary judgment because the damages sought for the claims prior to November 16, 2008, far exceeded the damages sought for the claims after November 16, 2008.  In order to avoid duplicative trials should Meehan win his appeal of the partial summary judgment, and for the interests of judicial economy, the trial court certified the grant of partial summary judgment as final and appealable, pursuant to Civ.R. 54(B).

### Causes of Action

{¶7}    Meehan's complaint lists eight counts: (1) breach of fiduciary duty, (2) usurpation of business opportunities, (3) conflict-of-interests transactions, (4) accounting—self-dealing, (5) conversion, (6) civil conspiracy, (7) alter ego (piercing the corporate veil), and (8) punitive damages.

{¶8}    Accounting and punitive damages are remedies, and not causes of action.  *See McNulty v. PLS Acquisition Corp.,* 8th Dist Cuyahoga No. 79025, 2002-Ohio-7220, ¶ 80.  Similarly, piercing the corporate veil is not a claim, it is a remedy encompassed within a claim, whereby liability for a particular tort may be imposed upon a particular individual.  *Geier v. Nat'l. GG Industries, Inc.,* 11th Dist. Lake No. 98-L-172, 1999 WL 1313640, *4 (Dec. 23, 1999).

---

[1] This date is four years prior to the date Meehan initially filed suit, and so sets the benchmark from which to calculate the statute of limitations.

{**¶9**}    Usurpation of business opportunities, conflict-of-interest transactions, and self-dealing are all breaches of fiduciary duty, and so will be analyzed as such for purposes of determining whether the statute of limitations applies.  *See Prodan v. Hemeyer,* 80 Ohio App.3d 735, 744, 610 N.E.2d 600 (8th Dist.1992);  *see also In re Trusteeship of Stone*, 138 Ohio St. 293, 302, 34 N.E.2d 755 (1941).   When determining which statute-of-limitations period to apply, the court looks to the nature of the case, rather than the form in which it was pled.  *Cohen v. Dulay*, 2017-Ohio-6973, 94 N.E.3d 1167, ¶ 15 (9th Dist.), *appeal not allowed,* 152 Ohio St.3d 1408, 2018-Ohio-723, 92 N.E.3d 879.

{**¶10**}  This leaves three causes of action for our analysis—breach of fiduciary duty, conversion, and civil conspiracy.

### *Standard of Review*

{**¶11**}  We review a grant of summary judgment de novo, and will uphold it when

> (1) no genuine issue as to any material fact remains to be litigated; (2) the
> moving party is entitled to judgment as a matter of law; and (3) it appears
> from the evidence that reasonable minds can come to but one conclusion,
> and viewing such evidence most strongly in favor of the party against
> whom the motion for summary judgment is made, that conclusion is
> adverse to that party.

*Pelletier v. Campbell,* 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13.

*Breach-of-Fiduciary-Duty Claims Based on Fraud*

{¶12} R.C. 2305.09 provides a four-year statute of limitations for breach-of-fiduciary-duty claims. *See Chateau Estate Homes, LLC v. Fifth Third Bank,* 2017-Ohio-6985, 95 N.E.3d 693, ¶ 25 (1st Dist.).

{¶13} Since Meehan initially filed his complaint on November 16, 2012, any of his claims based on acts or omissions from before November 16, 2008, would be barred by the statute of limitations. However, Meehan argues that his claims for breach of fiduciary duty "sound in fraud," and so the discovery rule of R.C. 2305.09 saves his claims from being barred.

{¶14} This court previously held that the discovery rule did not apply to claims for breach of fiduciary duty. *Herbert v. Banc One Brokerage Corp.*, 93 Ohio App.3d 271, 274-275, 638 N.E.2d 161 (1st Dist.1994). But, the Ohio Supreme Court, in *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 24, subsequently extended the discovery rule to include claims for breach of fiduciary duty "based on fraud," overruling *Herbert* to that extent.

{¶15} Under the discovery rule, claims for breach of fiduciary duty *based on fraud* are governed by the same four-year statute-of-limitations period, but the period does not begin to run until the plaintiff discovered, or should have discovered through due diligence, the matters giving rise to the cause of action. (Emphasis added.) *Id.*

{¶16} Civ.R. 9(B) requires that "all averments of fraud" be pled with particularity. In *Cohen,* 2017-Ohio-6973, 94 N.E.3d 1167, at ¶ 14, the plaintiff argued that his breach-of-fiduciary-duty claims were premised on allegations of fraud, and

so were subject to the discovery rule. The defendants argued that the plaintiff had failed to plead fraud with particularity. *Id.*

{¶17} The plaintiff in *Cohen* did allege that the defendants' conduct constituting breaches of fiduciary duty were either "knowing, willful, intentional or fraudulent, or were grossly negligent, reckless or in bad faith, and without justification or excuse." *Id.* at ¶ 17. But, the court found this type of "catch-all" language to be insufficient to satisfy Civ.R. 9(B). *Id.* Therefore, the court was unable to discern from the plaintiff's complaint which actions of the defendants he was claiming to be fraudulent. *Id.* It held that the plaintiff had failed to properly plead fraud as a cause of action, and so the discovery rule did not apply to the breach-of-fiduciary-duty claims. *Id.*

{¶18} We agree with the *Cohen* court's application of Civ.R. 9(B)'s particularity requirement to breach-of-fiduciary-duty claims that sound in fraud. Since *Cundall* extended the discovery rule to include claims for breach of fiduciary duty sounding in fraud, it logically follows that Civ.R. 9(B)'s particularity requirement should apply to these claims. Thus, in order to determine if the discovery rule applies, we must make the prerequisite determination of whether Meehan met the particularity requirement in pleading his claims for breach of fiduciary duty.

### *Civ.R. 9(B)'s Particularity Requirement*

{¶19} The elements of fraud are:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and

recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶20} Generally, to satisfy the particularity requirement of Civ.R. 9(B), a plaintiff should plead the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud. *Baker v. Conlan,* 66 Ohio App.3d 454, 458, 585 N.E.2d 543 (1st Dist.1990). The identity of the alleged fraudster is also relevant. *Wright v. Bank of New York,* 9th Dist. Summit No. 25842, 2012-Ohio-2289, ¶ 19.

{¶21} The particularity requirement in Fed.R.Civ.P. 9(B) (which is nearly identical to Ohio's Civ.R. 9(B)) has been relaxed in situations where the facts are known only by the defendant. *United Liberty Life Ins. Co. v. Pinnacle W. Capital Corp.,* 149 F.R.D. 558, 561 (S.D.Ohio 1993) (citing *Michaels Bldg. Co. v. Ameritrust Co. N.A.,* 848 F.2d 674, 680 (6th Cir.1988).

{¶22} The Civ.R. 9(B) particularity requirement must be applied in conjunction with Civ.R. 8's directives that the pleadings contain a short and plain statement of the claim, and that each averment should be "simple, concise, and direct." *F & J Roofing Co. v. McGinley & Sons, Inc.,* 35 Ohio App.3d 16, 17, 518 N.E.2d 1218 (9th Dist.1987); *see Baker* at 458.

The underlying determination in each case is whether the allegation is specific enough to inform the defendant of the act of which the plaintiff

complains, and to enable the defendant to prepare an effective response and defense.

*Baker* at 458.

{¶23} Nowhere in his complaint does Meehan allege fraud as a cause of action, nor does he separately and specifically allege the elements of fraud. Nevertheless, unlike in *Cohen,* where the court could not discern what conduct the plaintiff was claiming to be fraudulent, it is clear throughout the complaint what conduct Meehan claims to be fraudulent. For example, in his complaint, Meehan alleges that Mardis

- diverted MMCI's money to third persons and entities in which Meehan had no interest,

- created a separate company with a similar name (MMC Group) unbeknownst to Meehan for the purpose of diverting money,

- diverted money to Horn that should have been paid to MMCI,

- paid Horn $900,000 for "additional supervision" even though Horn was not qualified to do, and never actually did, the work,

- transferred money to Horn indirectly by making fraudulent payments to Artistic Tile,

- paid a customer's representative $20,000 to approve fraudulent change orders to existing contracts resulting in gross overcharges which were paid by the customer, shared with the customer's representative, and shared with Horn,

- instructed a customer to reissue a check for approximately $80,000 that was payable to MMCI, and make it payable to MMC Group,

- improperly transferred money and other assets to Horn, MMC Group, Artistic Tile, and TBG Properties L.L.C. worth over $1.75 million,

- drew over $150,000 on the company line of credit, despite an agreement between Meehan and Mardis not to do so, and used the money for non-business purposes, including transferring some or all of the funds to Horn, MMC Group, Artistic Tile, or TBG,

- formed TBG for the express purpose of purchasing a piece of foreclosed MMCI-owned real property using money from the line of credit, and

- exercised control over TBG, MMC Group, and Artistic Tile in a manner as to commit fraud upon Meehan.

{¶24} Looking at the Civ.R. 9(B) particularity requirements as laid out by *Baker* and *Wright*, Meehan pled the content of the false representation (the secret profit-sharing agreement, payments to Horn and Horn's companies, and diversion of MMCI funds under false pretenses), the facts misrepresented (the reasons for paying Horn and drawing down the MMCI line of credit without Meehan's knowledge or consent), the identity of the fraudster (Mardis, TBG, MMC Group, and Artistic Tile), and what was obtained as a result of the fraud (MMCI's money and property transferred to Horn, TBG, MMC Group, and Artistic Tile).

{¶25} It is undisputed that as co-owners of MMCI, Meehan and Mardis owed each other a fiduciary duty, which includes a duty to disclose. Therefore, Mardis's failure to disclose the profit-sharing agreement, the existence of MMC Group, and the existence of TBG could, if believed by a jury, amount to concealment of material facts.

{¶26} Although he does not allege with as much precision the time and place of the fraud, Meehan appears to allege to the best of his ability the facts known to him at the time. He alleges in the complaint that in 2007 Mardis began diverting MMCI money. He also alleges that Mardis paid Horn $900,000 for "additional supervision" in connection with a Mariott hotel project in Atlanta, Georgia in 2008. He further alleges that Mardis formed MMC Group in 2009 for the express purpose of diverting MMCI's money and assets.

{¶27} The court in *Cundall*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, at ¶ 24, found the discovery rule to apply where the plaintiff had "clearly asserted claims grounded in fraud and breach of fiduciary duty." Similarly, Meehan has clearly asserted claims for breach of fiduciary duty grounded in fraud, and has done so with sufficient particularity so as to put Mardis on notice of what conduct Meehan claims to be fraudulent. Therefore, the discovery rule applies.

### *The Discovery Rule*

{¶28} Next, we must determine whether a genuine dispute of material fact remains as to when Meehan, through reasonable diligence, should have discovered the fraud.

{¶29} To start the clock on the statute of limitations, it is not necessary that the victim possess "concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud." *Cundall* at ¶ 30. Rather, the inquiry is whether the facts known would lead a "fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." *Id.* at ¶ 29. Constructive knowledge of facts is sufficient to start the clock under the discovery rule. *Id.* at ¶ 30. In the *Cundall* case, the court found that the four-year statute of limitations began to run

when the beneficiaries first learned of the trustee's misconduct, since that is when the beneficiaries acquired a cause of action. *Id.* at ¶ 27-28. The court noted that theirs was "not a case of covert wrongdoing committed against unsuspecting beneficiaries." *Id.* at ¶ 34.

{¶30} Meehan claims that his case *is* a case of covert wrongdoing. He argues that he and Mardis were responsible for their own projects, that he did not have the ability to audit the expenditures of Mardis's projects, and that Mardis covered up his payments to Horn by labeling them as "additional supervision."

{¶31} Meehan claims that Mardis began diverting MMCI funds as early as 2007. There is conflicting evidence as to when Meehan knew, or should have known, of the alleged fraud. Mardis wrote an affidavit on January 24, 2018, in which he stated that Meehan's primary role within the company was to manage the financial affairs and the books and records of MMCI, oversee the bidding/estimating process, and obtain funding. Mardis was responsible for securing new projects and serving as project manager on existing projects. According to Mardis, beginning in 2006 or 2007, Meehan agreed to the arrangement with Horn in which Horn would refer construction projects to MMCI in exchange for half of the net profits generated on any of the projects Horn referred. Meehan further agreed that the money from those projects would be deposited into checking accounts separate from MMCI's general checking account, with the revenue then paid out to Horn and MMCI separately.

{¶32} Also, Mardis stated that Meehan was familiar with MMCI's accounting system and all entries made until he left the company in 2010, and that, at all times, MMCI's books were fully available to Meehan, and that with due diligence he should have discovered the alleged fraud much earlier.

11

{¶33} Nancy Guilkey, the inside accountant for MMCI, signed an affidavit on January 23, 2018. She was primarily responsible for maintaining accurate and complete financial records of MMCI's operations. She stated that she reported to Meehan, and regularly met with him to review MMCI's financial status. She was directed by Meehan and Mardis to create separate bank accounts for the Horn projects, and to distribute half of any net profits to Horn.

{¶34} Guilkey attached to her affidavit a "general ledger" from December 2007, which illustrates the flow of money for two projects referred by Horn. The general ledger shows that on December 18, 2007, MMCI wrote two checks—one to Horn and one to MMCI—splitting the estimated profits generated to date on the Atlanta project. The ledger shows a similar transaction for a project in Hilton Head on December 4, 2007. Guilkey further stated that Meehan's assertion that he was unaware of the profit-sharing arrangement with Horn is "completely false," that she fully documented in MMCI's accounting system all financial transactions involving Horn projects, and that Meehan routinely reviewed those financial transactions.

{¶35} James Kolbinsky provided outside accounting services to MMCI. He signed an affidavit on January 23, 2018. He stated that Meehan was his principal point of contact at MMCI, and that he regularly interacted with him to gather accounting information about MMCI. Meehan was "intimately familiar" with MMCI's accounting system and its books and records. It was Meehan who informed Kolbinsky about the arrangement to pay Horn 50 percent of the profits for referring projects to MMCI, and who directed that separate bank accounts be set up for the Horn projects.

{¶36} Kolbinsky's affidavit further follows Guilkey's affidavit nearly identically, as he points out the disbursements made to Horn for both the Atlanta and Hilton Head projects contained in the general ledger. Similarly, he stated that Meehan's claim that he was unaware of the profit-sharing arrangement with Horn is "completely false," and that Meehan had "full and complete knowledge of all of the company's financial transactions involving Horn * * *."

{¶37} Kolbinsky later gave a deposition on March 14, 2018, during which he made several statements that contradicted his affidavit. Although he eventually stated that he stood by his affidavit, he also backed away from some of the statements he made in his affidavit. For example, Kolbinsky stated that he had not become aware of the profit-sharing agreement with Horn until "recently," and that he was not aware of it during the timeframe in which the alleged fraud occurred. Later in his deposition, Kolbinsky stated that he "would think [Meehan] would have some information about somebody writing a check for a couple hundred thousand dollars," and that he would "*assume* that [Meehan] would be aware of the circumstances justifying that payment." (Emphasis added.) These statements contradict his affidavit, in which he stated that Meehan *knew* of the payments to Horn.

{¶38} During oral argument, there was some question as to whether Kolbinsky's deposition was a part of the record at the time the trial court granted partial summary judgment. The trial court initially granted partial summary judgment as to *only* Mardis on April 9, 2018. The April 9 order was not final and appealable. Kolbinsky gave his deposition on March 14, 2018, but it was not filed with the court until June 14, 2018. The court then granted partial summary

13

judgment as to *both* Horn and Mardis on June 19, 2018. The June 19 order was final and appealable. Although the court granted partial summary judgment in favor of Mardis twice, it was not final and appealable until June 19. Therefore, we conclude that Kolbinsky's deposition was properly before the trial court when it ordered partial summary judgment, and so may be considered by this court on appeal.

{¶39} Meehan gave his own affidavit on January 11, 2018. He swore that he did not know of the payments to Horn until August 2009, when Guilkey provided him with the job detail report for the Atlanta job. Through his affidavit, he also swore to the truthfulness of all of the factual assertions made by his attorney in his memorandum in opposition to the motion for summary judgment filed on January 11, 2018.

{¶40} Through those factual assertions, Meehan claims that he did not know of the profit-sharing arrangement until Horn and Mardis admitted to the arrangement in their depositions taken in May 2017. He claimed that because the parties were close friends who had been in business together for many years, they did not employ the kinds of checks and balances one would see in a typical company. He also says that he had no way of knowing of the profit-sharing arrangement with Horn because he was working on other projects, Mardis left no paper trail memorializing the payments except for the checks themselves, and Mardis mislabeled the payments as "additional supervision" so as to not arouse suspicion.

{¶41} There is strong evidence that Meehan had access to the financial records of Mardis's projects, but simply because a plaintiff has access to the financial records does not mean that he should have, with due diligence, discovered the fraud. *See Miller, On Behalf of Miller v. McCann*, 1st Dist. Hamilton No. C-970035, 1997

WL 789394, *2 (Dec. 26, 1997). On this record, the jury will have to make that call. Meehan's affidavit, the memorandum in opposition, Kolbinsky's affidavit, and Kolbinsky's deposition testimony all combine to create genuine issues of material fact as to when Meehan actually learned of the alleged fraud, his involvement in the financial aspects of Mardis's projects, and whether through reasonable diligence he should have discovered the fraud prior to November 16, 2008.

{¶42} Because there are genuine issues of material fact, the trial court erred in granting partial summary judgment on all breach-of-fiduciary-duty claims against Mardis arising from acts or omissions occurring before November 16, 2008. However, it is undisputed that Horn did not owe Meehan any fiduciary duty. Therefore, none of Meehan's claims for breach of fiduciary duty apply to Horn. The trial court did not err in granting partial summary judgment in favor of Horn on the breach-of-fiduciary-duty claims.

### *Conversion*

{¶43} The statute of limitations for conversion is four years, but the discovery rule also applies to conversion claims. R.C. 2305.09; *Wilkerson v. Hartings*, 1st Dist. Hamilton No. C-081160, 2009-Ohio-4987, ¶ 11; *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 181, 546 N.E.2d 206 (1989).

{¶44} As discussed above, there is a dispute of material fact as to when Meehan knew or should have known of the fraud which led to the breach-of-fiduciary-duty claims. Meehan's conversion claim rests upon the same set of facts as his claims for breach of fiduciary duty. Therefore, there is a dispute of material fact as to when Meehan should have discovered the conversion. The trial court erred when it granted partial summary judgment on all conversion claims against Mardis

arising from acts or omissions prior to November 16, 2008. However, in his complaint, Meehan does not allege conversion by Horn. He only alleges conversion by Mardis. Accordingly, the trial court did not err in granting partial summary judgment in favor of Horn on that claim. [2]

### Civil Conspiracy

{¶45} Meehan alleges that both Mardis and Horn engaged in a civil conspiracy to deprive him of his rightful share of the profits of MMCI, and to reduce the value of MMCI stock.

{¶46} Under Ohio law, a claim for civil conspiracy requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Doane v. Givaudan Flavors Corp.*, 184 Ohio App.3d 26, 2009-Ohio-4989, 919 N.E.2d 290, ¶ 32 (1st Dist.). A civil-conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy. *Id.*

{¶47} In a conspiracy, the acts of coconspirators are attributable to each other. *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 476, 700 N.E.2d 859 (1998).

> All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable.

*Id.* (quoting Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, Section 46, 323 (5th Ed.1984)); *see Minarik v. Nagy,* 8 Ohio App.2d 194, 195,

---

[2] Although it is unclear whether any claims for conversion or breach of fiduciary duty remain against Horn for acts or omissions after November 16, 2008, Horn only moved for summary judgment on the claims arising out of acts or omissions prior to November 16, 2008, and so we only address those claims.

16

193 N.E.2d 280 (8th Dist.1963) ("the significance of the conspiracy consists, therefore, in this: that it gives the person injured a remedy against parties not otherwise connected with the wrong.").

{¶48} Simply by accepting the money from Mardis, knowing that Mardis converted the funds or obtained the funds through a breach of fiduciary duty, Horn could be found to have entered into a conspiracy with Mardis to deprive Meehan of his money and property.

{¶49} Nevertheless, Meehan has not presented any evidence that Horn knew that Mardis converted the funds or obtained the funds through a breach of fiduciary duty. Also, Meehan has not presented any evidence that Horn otherwise furthered, aided, encouraged, or adopted any of the wrongful acts of Mardis. Therefore, there is no genuine issue of material fact, and the trial court did not err in granting partial summary judgment in favor of Horn on this claim.

{¶50} Meehan has not presented any evidence of other coconspirators. Since Mardis cannot conspire with himself, the trial court did not err in granting partial summary judgment in favor of Mardis on this claim.

### Conclusion

{¶51} Meehan's sole assignment of error is sustained as to the claims of breach of fiduciary duty and conversion against Mardis, and is overruled as to all other claims. Genuine issues of material fact remain as to when Meehan knew, or should have known, about the acts or omissions giving rise to his claims for breach of fiduciary duty and conversion against Mardis, and so the trial court erred when it granted partial summary judgment on those claims. Since we reverse on the grounds

of the discovery rule and the statute of limitations, we do not reach the issue of whether equitable tolling applies.

{¶52} Horn owed no fiduciary duty to Meehan, and Meehan did not allege a claim of conversion against Horn, so the trial court did not err in granting partial summary judgment as to the claims for breach of fiduciary duty and conversion against Horn. Since Meehan failed to present sufficient evidence of a civil conspiracy between Horn and Mardis, the trial court did not err in granting partial summary judgment on those claims. The trial court's judgment is reversed as to the claims for breach of fiduciary duty and conversion against Mardis, and is affirmed in all other respects. This cause is remanded for further proceedings consistent with the law and this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.

18