[Cite as *White v. Pitman*, 2020-Ohio-3957.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

BRYAN WHITE,

COOL COUNTRY CORPORATION,

   and

TUPPER PLAINS INVESTMENTS, LLC,

     Plaintiffs-Appellants,

  vs.

AARON PITMAN,

API DOMAIN CAPITAL, LLC,

RA DOMAIN CAPITAL, LLC,

HP INSURANCE GROUP, INC.,

AUTOINSURANCENOW, LLC,

PERSONALINJURY.ORG, LLC,

COOL COUNTRY GROUP, LLC,

   and

RYAN GOLDSCHMIDT,

    Defendants-Appellees.

APPEAL NO. C-190441
TRIAL NO. A-1901247

*O P I N I O N.*

Civil Appeal From:     Hamilton County Court of Common Pleas

Judgment Appealed From Is:     Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 5, 2020

*Carlile Patchen & Murphy, LLP, Matthew S. Brown* and *Joseph M. Patchen*, for Plaintiffs-Appellants,

*Graydon Head & Ritchey LLP* and *Daniel J. Knecht*, for Defendants-Appellees Aaron Pitman, API Domain Capital, LLC, HP Insurance Group, Inc., AutoinsuranceNow, LLC, Personalinjury.org, LLC, and Cool Country Group, LLC,

*Murphy Landen Jones PLLC* and *Michael S. Jones*, for Defendants-Appellees Ryan Goldschmidt and RA Domain Capital, LLC.

**MYERS, Presiding Judge.**

{¶1}    Plaintiffs-appellants Bryan White, Cool Country Corporation, and Tupper Plains Investments, LLC, appeal from the trial court's entry granting the Civ.R. 12(B)(6) motion to dismiss filed by defendants-appellees Aaron Pitman, API Domain Capital, LLC, HP Insurance Group, LLC, AutoinsuranceNow, LLC, Cool Country Group, LLC, Personalinjury.org, LLC, Ryan Goldschmidt, and RA Domain Capital, LLC.

{¶2}    We hold that the trial court properly dismissed the plaintiffs' asserted claim of piercing the corporate veil.  But because the trial court failed to accept all allegations in the plaintiffs' complaint as true when finding that previously executed releases barred all claims in the complaint, and because it erred in determining that the plaintiffs failed to plead their fraud claim with particularity, we hold that the trial court erred in granting the motion to dismiss with respect to the remaining claims, and we reverse its judgment in part.

### *Factual and Procedural Background*

{¶3}    Pitman, who is engaged in the business of acquiring, developing, and selling internet domain names, approached White regarding White's investment in various internet-domain-related investments.  According to the complaint, Pitman proposed that White invest in various entities, and that Pitman utilize his experience to acquire, develop, market, and ultimately sell the purchased domain names for a profit.  White relied on Pitman to identify the domains to purchase, with the belief that the domain names would be purchased from disinterested third parties and that

any subsequent sales of the domain names would be arms-length transactions. White and Pitman engaged in the following transactions:

1. White invested $125,000 in AutoinsuranceNow, LLC. As set forth in the operating agreement of AutoinsuranceNow, LLC, White's company, Cool Country Corporation, owned 40 percent of the entity, while API Domain Capital, LLC, which was solely owned by Pitman, owned 60 percent of the entity.

2. White invested $50,000 in Personalinjury.org, LLC. As set forth in the operating agreement of Personalinjury.org, LLC, White's company Tupper Plains Investments, LLC, owned 40 percent of the entity, and API Domain Capital, LLC, owned 60 percent.

3. White invested $200,000 in Digital Asset Brokerage Group, LLC. As set forth in the parties' joint venture agreement, White was to personally own 10 percent of this entity, and HP Insurance Group, LLC, was to own 90 percent.

4. White invested $750,000 in Dependent.com, LLC. The parties formed Cool Country Group, LLC, to hold this domain name. White's company Cool Country Corporation owned 50 percent of Cool Country Group, LLC, and RA Domain Capital, LLC, owned the other 50 percent.

{¶4} The parties subsequently entered into a partial buyback[1] of White's company Cool Country Corporation's shares in Cool Country Group, LLC. For

---

[1] The parties refer to this transaction as a buyback agreement. The transaction in fact involves a sale of shares, rather than a buyback, because R.A. Domain Capital, LLC, and API Domain Capital, LLC, did not own the shares prior to Cool Country Corporation's initial purchase of them.

$30,000, R.A. Domain Capital, LLC, and API Domain Capital, LLC, purchased a portion of Cool Country Corporation's shares in the entity. As part of the agreement, the parties executed a mutual release of claims. This release provided in relevant part that:

> In exchange for and in consideration of the promises contained in this Agreement, Seller [Cool Country Corporation] and Bryan White, being the sole shareholder and director of Seller, on behalf of themselves and on behalf of their respective, heirs, successors, representatives, agents, assigns, next of kind, members and affiliates (the "Seller Releasing Parties") hereby fully, finally, and forever release, acquit, and discharge the Company, RA Domain, Ryan Goldschmidt, being the sole member of RA Domain, API Domain, Aaron Pitman, being the sole member of API Domain, and their respective affiliates, officers, directors, managers, members[,] employees, attorneys, agents, representatives[,] heirs, next of kin, successors and assigns ("Buyer Released Parties") from any and all claims, causes of action, sums of money, accounts, demands, losses, damages, liabilities, judgments and executions of whatever kind or nature, whether known or unknown, direct or indirect, absolute or contingent, or suspected or unsuspected, whether the same be in administrative proceedings, in arbitration or other, at law, in equity or mixed, which the Seller Releasing Parties ever had, now have, or hereafter may have against any of the Buyer Released Parties prior to the execution of this Agreement.

{¶5} Pitman, through his company API Domain Capital, LLC, additionally purchased all of White's company Cool Country Corporation's shares in AutoinsuranceNow, LLC, for $62,500. This sale agreement also contained a similarly worded mutual release of claims.[2]

{¶6} Approximately two years after these buyback agreements were executed, the plaintiffs filed a complaint in Athens County, Ohio against Pitman and the other defendants. The complaint alleged that Pitman induced White to invest in the transactions set forth above by holding himself out as an expert in the field of domain-name investment. Pitman solicited White to invest by representing that the sellers of the domain names they would purchase together were bona fide, disinterested third-parties and that subsequent sales of the domain names would be arms-length transactions, and by promising that White would receive a high rate of return on his investments.

{¶7} The complaint set forth the domain purchases described above and alleged that Goldschmidt and Roderick Hammons, who were the owners of the domain names prior to White and his companies' purchase of them, assisted Pitman in his efforts to defraud White. The complaint alleged that Goldschmidt and Hammons were Pitman's business associates, that the domain-name purchases were not the promised arms-length transactions, and that White had been induced to advance the funds for purchase of the domains based on grossly inflated prices that exceeded their fair market value. White alleged that he was induced by Pitman's misrepresentations and concealment of material facts to purchase the domains, and that he had been fraudulently induced to sign the buyback agreements containing the

---

[2] The parties also refer to this transaction as a buyback agreement, although it involves a sale of shares, rather than a buyback.

6

release clauses without receiving consideration in return. The complaint further alleged that Pitman had a direct pecuniary interest in the form of an undisclosed ownership interest in Digital Asset Brokerage Group, LLC, (one of the jointly purchased domains) or in another side deal with his business associates Goldschmidt and Hammons that involved Pitman's receipt of all or a portion of the domain sales proceeds.

{¶8} The complaint contained claims for fraud, breach of the fiduciary duty of loyalty, a violation of Ohio's Limited Liability Act, a violation of Ohio's Securities Act, breach of contract, and piercing the corporate veil. White sought damages in the amount of his total investments, less the money he received in the buyback agreements. He also sought compensatory and punitive damages, and a determination that his investments in HP Insurance Group, Inc., AutoinsuranceNow, LLC, Personalinjury.org, LLC, and Cool Country Group, LLC, were void. Upon the defendants' motion to transfer venue, which was premised on a forum-selection clause in the buyback agreements, the Athens County trial court transferred venue to the Hamilton County Court of Common Pleas.

{¶9} After transfer, the defendants filed a Civ.R. 12(B)(6) motion to dismiss, arguing that the plaintiffs' claims were barred by the release clauses in the buyback agreements. The trial court granted the motion to dismiss, determining that all claims were barred by the two releases. It held that the plaintiffs failed to provide any factual support for their assertion that they were fraudulently induced to sign the buyback agreements, and that the plaintiffs could not challenge the validity of the releases because they had not tendered back the consideration they had received. The trial court further held that the plaintiffs failed to state the allegations of fraud in

count one with sufficient particularity; that, with respect to the claim for breach of the fiduciary duty of loyalty, the plaintiffs failed to cite any statute, case law, or operative facts that established such a duty; that the plaintiffs failed to allege acts on the part of the defendants that would constitute a breach of contract; and that the plaintiffs had failed to state a separate cause of action for piercing the corporate veil.

{¶10} Plaintiffs appeal, arguing in a single assignment of error that the trial court erred in granting the defendants' motion to dismiss.

### Final, Appealable, Order

{¶11} Before considering the merits of the plaintiffs' argument, we must determine if we have jurisdiction to proceed with this appeal.

{¶12} This court only has jurisdiction to review final and appealable orders. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2505.03. Whether the order in this case was final and appealable depends on whether the dismissal was "on the merits" or "otherwise than on the merits." A dismissal "otherwise than on the merits" is without prejudice and is generally not a final, appealable order because such a dismissal does not typically prevent a party from refiling. *State ex rel. DeDonno v. Mason*, 128 Ohio St.3d 412, 2011-Ohio-1445, 945 N.E.2d 511, ¶ 2; *Bank of Am., N.A. v. Edwards*, 2017-Ohio-4343, 93 N.E.3d 212, ¶ 36 (9th Dist.). Whereas a dismissal that is "on the merits" is a dismissal with prejudice, and is final and appealable. *Bank of Am., N.A.* at ¶ 36.

{¶13} Civ.R. 41(B)(3) provides that "[a] dismissal under division (B) of this rule and any dismissal not provided for in this rule, except as provided in division (B)(4) of this rule, operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." Civ.R. 41(B)(4) does not apply in this case.

Here, the trial court dismissed all claims in the plaintiffs' complaint on the basis of the releases contained in the buyback agreements. This was an adjudication on the merits. Civ.R. 41(B)(3); *see Pasipanki v. Morton*, 9th Dist. Medina No. 1158, 1982 WL 2809, *4 (Oct. 27, 1982).

{¶14} The trial court did not specify in this case whether the dismissal was with or without prejudice. Where a trial court's entry is silent as to whether a dismissal is with or without prejudice, the dismissal is treated as being with prejudice. *See Freedom Mortgage Corp. v. Hufford*, 5th Dist. Licking No. 16-CA-72, 2017-Ohio-1111, ¶ 13.

{¶15} Because the trial court's dismissal was on the merits and was a dismissal with prejudice, its entry is a final, appealable order subject to review by this court.

### *Standard of Review*

{¶16} We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo. *Parker v. Ford Motor Co.*, 2019-Ohio-882, 124 N.E.3d 893, ¶ 10 (1st Dist.). When ruling on a motion to dismiss, the trial court is confined to the allegations in the complaint, and it must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Id.* A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint, and it should not be granted "unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Id.*, quoting *Thomas v. Othman*, 2017-Ohio-8449, 99 N.E.3d 1189, ¶ 19 (1st Dist.).

9

### *Fraud Claim was Pled with Particularity*

**{¶17}** The trial court dismissed the plaintiffs' claim for fraud based on its determination that the plaintiffs had failed to plead the claim with the required particularity.

**{¶18}** To succeed on a claim for fraud, a plaintiff must establish:

(a) a representation or, where there is a duty to disclose, concealment

of a fact, (b) which is material to the transaction at hand, (c) made

falsely, with knowledge of its falsity, or with such utter disregard and

recklessness as to whether it is true or false that knowledge may be

inferred, (d) with the intent of misleading another into relying upon it,

(e) justifiable reliance upon the representation or concealment, and (f)

a resulting injury proximately caused by the reliance.

*State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, 134 N.E.3d 1185, ¶ 36.

**{¶19}** Civ.R. 9(B) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy this requirement, "a plaintiff should plead the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud" along with the identity of the alleged fraudster. *Meehan v. Mardis*, 2019-Ohio-4075, 146 N.E.3d 1266, ¶ 20 (1st Dist.).

**{¶20}** Here, the plaintiffs allege that fraud resulted both from the defendants' affirmative misrepresentations and concealment of facts where there was a duty to disclose. The duty to disclose allegedly stemmed from the fiduciary relationship that

10

existed between the members of the limited liability companies (including White and the entities owned by either White or Pitman) that the parties had formed.

{¶21} The complaint alleged that, in order to secure White's investment, Pitman represented that the sellers of the domain names they would purchase together would be bona fide, disinterested third-parties and that any subsequent sales of the domain names would be arms-length transactions. The complaint further alleged that Pitman failed to disclose that Goldschmidt and Hammons, from whom the domains were purchased, were Pitman's business associates, and that they assisted Pitman in his efforts to defraud White by grossly inflating the prices for the purchased domains so that the prices exceeded the fair market value. It also alleged that Pitman misrepresented and concealed his pecuniary interest in the purchase of the domains. The complaint set forth the date of each domain purchase as well as the amount that White had invested, and alleged that White was justified in relying on Pitman's representations because Pitman held himself out as an expert in the field of domain-name investment. The plaintiffs asserted that, as a result of Pitman's misrepresentations and concealment of material facts, they incurred significant monetary damages totaling the sum of White's investments less the money received from the buybacks.

{¶22} The plaintiffs' allegations of fraud satisfied the Civ.R. 9(B) requirement that all averments of fraud be pled with particularity. We consequently find that the trial court erred in dismissing the fraud claim on that ground.

### *Release of Claims*

{¶23} The trial court dismissed all claims in the plaintiffs' complaint on the grounds that the claims were barred by the releases in the buyback agreements. The

11

defendants asserted the releases as an affirmative defense. The releases provided that White and his companies released the defendants from all claims and causes of action that White and his companies may have against them, whether known or unknown at the time.

{¶24} While a release is generally "an absolute bar to a later action on any claim encompassed within the release," a release may be challenged as having been obtained by fraud in the factum or fraud in the inducement. *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13, 552 N.E.2d 207 (1990). Fraud in the factum exists where the executor of the release lacked an understanding and was unaware that a release had been signed because of an act or misrepresentation of another party. *Id.* at paragraph one of the syllabus. A claim of fraud in the inducement, on the other hand, involves a claim that the releasor "was induced to grant the release upon the wrongful conduct or misrepresentation of the person so benefited. The misrepresentation may concern the economic value of the claim released." *Id.* at 14. A release allegedly obtained by fraud in the inducement can only be challenged after a return or tender of consideration. *Id.* The purpose of this tender requirement is to prevent a releasor from "retain[ing] the benefit of his act of compromise and at the same time attack its validity when he understood the nature and consequence of his act." *Id.*

{¶25} The releases in this case were contained in the buyback agreements. The plaintiffs did not specifically challenge the buyback agreements in their fraud claim, but, to prevent the releases from barring their claims, the plaintiffs contended that the releases had been obtained by fraud in the inducement. The complaint contained the following allegations with respect to the releases:

On September 16, 2016, Pitman did a partial buyback of White's shares in Cool Country Group, LLC for $30,000, but Pitman fraudulently induced White to sign on behalf of Cool Investments, LLC and Cool Country Corporation as part of that a further fraudulent document, with no consideration, which included certain release provisions within, unrelated to [the] purported purpose of the transaction.

On October 17, 2016, Pitman repurchased White's investment in Autoinsurancenow, LLC but fraudulently induced him to sign on behalf of Cool Investments, LLC as part of that a further fraudulent document, with no consideration, which included certain release provisions within, unrelated to the purported purpose of the transaction.

{¶26} The trial court held that the plaintiffs could not challenge the validity of the releases because they had not tendered back the consideration that they received, and because they failed to provide any factual support for the allegation that they were fraudulently induced to sign the buyback agreements.

{¶27} Plaintiffs contend that the trial court's determination that they failed to tender back consideration was contradictory to the assertion in the complaint that no consideration had been received. The defendants argue that the plaintiffs' assertion that they had not received consideration was belied by their acknowledgment in the complaint, as well as the buyback agreements attached to the complaint, that they received approximately $92,500 in consideration for the buyback agreements.

{¶28} For purposes of reviewing a Civ.R. 12(B)(6) motion to dismiss, the trial court was required to accept the plaintiffs' factual allegations as true and draw all inferences in favor of the nonmoving party. *Parker*, 2019-Ohio-882, 124 N.E.3d 893, at ¶ 10. The trial court was required to accept as true the plaintiffs' allegation that White and his companies had not received any consideration in return for executing the releases. And because the plaintiffs alleged that no consideration was received, there was no consideration to be tendered back before contesting the releases. Considering the plaintiffs' complaint in its entirety, including the releases in the buyback agreements, we cannot say that there are no set of facts under which the plaintiffs can recover. *Id.*

{¶29} We further hold that the trial court erred in determining that the plaintiffs failed to provide any factual support for the allegation that they were fraudulently induced to sign the buyback agreements. When considering whether a plaintiff has complied with the Civ.R. 9(B) particularity requirement, "[t]he underlying determination in each case is whether the allegation is specific enough to inform the defendant of the act of which the plaintiff complains, and to enable the defendant to prepare an effective response and defense." *Meehan*, 2019-Ohio-4075, 146 N.E.3d 1266, at ¶ 22, quoting *Baker v. Conlan*, 66 Ohio App.3d 454, 458, 585 N.E.2d 543 (1st Dist.1990). The plaintiffs' allegation of fraudulent inducement, combined with the other allegations of fraud in the complaint, provided the defendant with sufficient notice of the plaintiffs' complaints and an ability to effectively prepare a defense.

{¶30} We hold that the trial court erred in granting the motion to dismiss on the grounds that the releases barred the plaintiffs' claims.

### *Breach of Fiduciary Duty of Loyalty*

{¶31} We next consider the trial court's dismissal of the plaintiffs' claim for breach of the fiduciary duty of loyalty. The elements for a breach-of-fiduciary-duty claim are "(1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury proximately resulting." *Vontz v. Miller*, 2016-Ohio-8477, 111 N.E.3d 452, ¶ 28 (1st Dist.).

{¶32} In addition to finding that it was barred by the releases, the trial court held that the plaintiffs' asserted claim for breach of the fiduciary duty of loyalty was subject to dismissal because the plaintiffs failed to cite any statute, case law, or operative facts that established such a duty on the part of the defendants. In so concluding, the trial court relied on the operating agreement of AutoinsuranceNow, LLC, which referenced the duty of loyalty in the context of conflicts of interest and stated that "[a] Member, Manager, officer or agent does not violate a duty or obligation to the Company merely because his conduct furthers the Member's, Manager's, officer's or agent's own interest."

{¶33} Members of a limited liability company owe each other the fiduciary duties of loyalty and care. *See* R.C. 1705.281. These obligations are far broader than the limited language in the parties' operating agreement that the trial court relied on to find that the fiduciary obligation was extinguished.

{¶34} The plaintiffs asserted in the complaint that White and Pitman had formed limited liability companies, and that these limited liability companies involve a fiduciary relationship and impose upon their members (which were corporate entities owned individually by White or Pitman) a duty to exercise the utmost good faith and honesty in all dealings and transactions related to the companies. The

complaint further alleged that Pitman and API Domain Capital, LLC, breached the duty of loyalty owed to White and his entities by misrepresenting and concealing material facts pertaining to the domain purchases, by securing a pecuniary interest for Pitman in the purchase of the domains, and by failing to make reasonable efforts to develop, market, and sell the domains.

{¶35} These factual allegations, combined with the legal duty imposed by R.C. 1705.281, are sufficient to allege a breach of the fiduciary duty of loyalty that survives a motion to dismiss. The trial court was required to accept the factual allegations as true, and it erred in concluding as a matter of law that the breach of fiduciary duty was overcome by the limited language of the operating agreement.

### Breach of Contract

{¶36} With respect to the plaintiffs' claim for breach of contract, the trial court found that, in addition to being barred by the releases, the claim was subject to dismissal because the plaintiffs had failed to allege acts on the part of the defendants that would constitute a breach of contract.

{¶37} The elements of a breach-of-contract claim are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Becker v. Direct Energy, LP*, 2018-Ohio-4134, 112 N.E.3d 978, ¶ 38 (2d Dist.), quoting *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

{¶38} In support of their breach-of-contract claim, the plaintiffs alleged that each of the operating agreements constituted a valid and enforceable contract between White and Pitman and their companies; that White complied with his duties set forth in the operating agreements; and that Pitman breached the operating

16

agreements by taking a pecuniary interest in the purchase of the domains and failing to make reasonable efforts to develop, optimize, market, and secure buyers for the domains.

{¶39} The trial court was required to accept these factual allegations as true and draw all reasonable inferences in favor of the plaintiffs, the nonmovants. *See Parker*, 2019-Ohio-882, 124 N.E.3d 893, at ¶ 10. The allegations in the complaint sufficiently set forth a claim for breach of contract, and the trial court erred in concluding otherwise.

### *Piercing the Corporate Veil*

{¶40} The trial court additionally dismissed the plaintiffs' claim for piercing the corporate veil because it determined that the complaint failed to state a separate cause of action for the claim.

{¶41} The complaint, in fact, did purport to set forth a claim for piercing the corporate veil. But, as this court recently held, "piercing the corporate veil is not a claim, it is a remedy encompassed within a claim, whereby liability for a particular tort may be imposed upon a particular individual." *Meehan*, 2019-Ohio-4075, 146 N.E.3d 1266, at ¶ 8. We accordingly hold that the trial court did not err in dismissing the plaintiffs' claim for piercing the corporate veil because it was not a valid cause of action.

### *Conclusion*

{¶42} The plaintiffs' assignment of error is overruled with respect to the asserted claim for piercing the corporate veil, but is otherwise sustained. Because the trial court erred in holding that the remaining claims were barred by the releases,

erred in finding that the complaint failed to set forth claims for breach of the fiduciary duty of loyalty and breach of contract, and erred in determining that the plaintiffs failed to plead their fraud claim with sufficient particularity, we reverse its dismissal of all claims except the claim for piercing the corporate veil.

**{¶43}** The trial court's judgment is affirmed in part, reversed in part, and this cause is remanded for further proceedings.

Judgment accordingly.

**BERGERON** and **WINKLER, JJ.,** concur**.**

Please note:
    The court has recorded its own entry on the date of the release of this opinion.