[Cite as *Bates v. Cincinnati*, 2013-Ohio-5893.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JAMES BATES, | : | APPEAL NO. C-130145 |
| | | TRIAL NO. A-0711838 |
| WILLIAM POEHNER, | : | |
| | | *O P I N I O N.* |
| WILLIAM NINTRUP, | : | |
| STEVEN HALE, | : | |
| WILLIAM MICHAEL HENDERSON, | : | |
| JEFFREY FISHBURN, | : | |
| JOSEPH COSTELLO, | : | |
| RONALD BLUESTEIN, | : | |
| CRAIG W. CANTY, | : | |
| ROGER J. HABERTHIER, | : | |
| PASQUALE J. CIPOLLONE, | : | |
| MICHAEL W. HEITZ, | : | |
| CAROL A. WESTERMEYER, | : | |
| ELLEN KATHMAN, | : | |
| GEORGIA RUCH, | : | |
| MICHELLE NASH, | : | |
| MARTHA GENTRY, | : | |
| MARK JONES, | : | |
| M. PATRICIA HANDEL, | : | |

DAVID P. MCKENRICK,                          :

RICHARD M. KOOPMAN,                          :

JAMES B. SUITS,                              :

PAMELA J. GREELY,                            :

DARLENE GRIM,                                :

DONNA WOLFF,                                 :

ELLEN M. WRIGHT,                             :

DEARY KELLY,                                 :

DENNIS WESTON,                               :

WILLIAM PHELPS,                              :

KATHY A. GOERL,                              :

CAROL L. WALKER,                             :

CHERYL ISAACS,                               :

LUCY COATES,                                 :

LAURA BROWN,                                 :

DELORIA J. KELLEY,                           :

MELISSA SMITH,                               :

VICTORIA D. ROBINSON-HUNTER,                 :

KAY PRESTON,                                 :

ROBERT MICHAEL SHRYOCK,                      :

DIANE GLOS,                                  :

CARL RIESENBECK,                             :

TAMMY EDDS,                                  :

CHARLES LAMMERS,                    :

PEGGY MEADOWS,                      :

DEVINDER SAGGAR,                    :

LAWRENCE HILL,                      :

PAUL ZOECKLEIN,                     :

JOANN LENZER,                       :

   and                              :

JOHN SAMUELSON,                     :

   Plaintiffs-Appellees,            :

   vs.                              :

CITY OF CINCINNATI,                 :

   Defendant-Appellant.             :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Judgment Entered

Date of Judgment Entry on Appeal: December 24, 2013


*Hardin, Lazarus & Lewis, LLC*, *Donald E. Hardin* and *Kimberly A. Rutowski,* for Plaintiffs-Appellees,

*John P. Curp*, City Solicitor, *Graydon Head & Ritchey, LLP*, and *Steven P. Goodin,* for Defendant-Appellant.


**Please note:  this case has been removed from the accelerated calendar.**

**DeWINE, Judge.**

{¶1}     This case involves a group of employees who participated in an early-retirement program offered by the city of Cincinnati.  The issue is whether the city violated its agreement with them when city council passed an ordinance that allowed other retirees who had retired previously to receive better medical benefits than those who participated in the early-retirement program.  The trial court determined that it had, but we disagree.  We conclude that the agreement that the city executed with participants in the early-retirement program was unambiguous, and that nothing in the agreement guaranteed a certain level of medical benefits or prohibited the city from modifying retiree medical benefits.  We therefore reverse the judgment of the trial court and enter judgment for the city.

I.

{¶2}     In 2007, the city of Cincinnati was faced with a budget shortfall and the possibility of employee lay-offs.  To alleviate the problem, City Manager Milton Dohoney proposed that the city adopt an early-retirement-incentive program to move some employees and positions from the city's operating budget to the Cincinnati Retirement System ("CRS").  To implement the proposal, the city in July 2007 offered early retirement to employees with at least 28 years of service.  Under the city's Early Retirement Incentive Program ("ERIP"), eligible employees were offered two years of employment credit to allow them to retire earlier.  The employees would receive initial monthly pension benefits that were seven percent more than they would have received absent the two-year employment credit.

{¶3}     To accept the offer of early retirement, the employees were required to sign a binding declaration of intent prior to September 1, 2007.  The employees were

4

then required to sign a second agreement—"The CRS Voluntary Early Retirement Incentive Program Release Agreement" ("ERIP Agreement")—which laid out the terms and conditions of the program and superseded all prior agreements. 269 employees accepted the offer. Forty-nine of these employees ("ERIP participants") are the plaintiffs-appellees in this case.

{¶4} At the time that the ERIP participants signed the declarations of intent, current Cincinnati employees were receiving 80/20 medical coverage, which meant that the employees were responsible for 20 percent of their medical costs. Members of the CRS were responsible for only four percent of their medical costs under a 96/4 coverage plan. In a letter dated May 25, 2007, the city informed members of the CRS that, as of January 1, 2008, members of CRS would receive the same 80/20 medical coverage that current employees received. The change would save the CRS $267 million and reduce the city's annually required CRS contribution by $23.2 million. The change would also bring the retirees' medical coverage into line with the municipal code, which provided that retirees would receive the same benefits as current employees. *See* Cincinnati Municipal Code 203-43(b)(i).

{¶5} The city manager recognized that the idea of moving current retirees to an 80/20 coverage plan would be "a difficult and sensitive subject." The retirees were accustomed to paying a lower share of healthcare costs. To ease the transition for the current retirees, city council considered making the change on a going-forward basis, applying only to employees who retired after December 31, 2007. But, as pointed out by the city manager, allowing retirees to maintain the better plan would result in a cost increase to CRS and less savings for the city. As a compromise, on September 26, 2007, city council passed an ordinance that allowed the current members of the CRS to keep their 96/4 plan with an eye toward moving them into the less generous 80/20 plan in

the future. But the ordinance specifically excluded the ERIP participants from the provision. The effect of the ordinance was that members of the CRS who had not retired under the city's ERIP maintained their 96/4 plan, while ERIP participants, even those who had retired as of September 26,[1] were moved to the 80/20 plan as of January 1, 2008.[2] The ERIP participants assert that this differed from their understanding that, as part of their early retirement, they would receive the same medical coverage as current retirees.

## II.

{¶6} The ERIP participants filed a lawsuit against the city, alleging that the city had breached its agreements with the ERIP participants and had fraudulently induced the participants to accept the ERIP. The ERIP participants also sought to enjoin the city from providing them medical coverage different from that provided to other members of the CRS.

{¶7} The parties filed opposing motions for summary judgment, which the trial court denied. At a hearing before the court, the ERIP participants testified that they had been assured by various members of the city administration that they would receive the same medical benefits that current CRS members were receiving. Following the hearing, the court concluded that the city had not fraudulently induced the ERIP participants to accept the offer of early retirement, but that it had breached the ERIP agreements. The court then awarded damages to the ERIP participants after a separate hearing.

---

[1] Of the 49 plaintiffs-appellants, 19 retired as of September 7, 2007. The remaining 30 retired after the passage of the September 26 ordinance.
[2] The retirees who were allowed to keep the 96/4 medical-coverage plan have since been moved to the 80/20 plan, so that as of January 1, 2012, all retirees are receiving the same medical coverage.

III.

{¶8}     In its first assignment of error, the city asserts that the trial court erred when it held that the city had breached the ERIP agreements. The city contends that the ERIP agreements were unambiguous and that the court should not have considered extrinsic evidence. The city further argues that even if the extrinsic evidence was properly considered, it supported a finding that the city had not breached the agreements.

{¶9}     The ERIP participants counter that the language in the agreements was ambiguous, and that the court properly considered the testimony of the ERIP participants and other extrinsic evidence to determine the parties' intent.

{¶10}     As in any breach-of-contract case, our starting point is the agreement. In its decision, the trial court concluded that

> [t]he two contract documents [the declaration of intent and the ERIP
> agreement], both prepared by the City, are contradictory in nature, as
> well as confusing, unclear, and ambiguous with respect to the health care
> benefits the Plaintiffs were to receive upon early retirement.

Because it found the agreement ambiguous, the court concluded that it could consider extrinsic evidence to give effect to the parties' intentions.

{¶11}     Although the trial court referred to both agreements in its decision, for purposes of the breach-of-contract action—which is the only claim at issue in this appeal—it is the ERIP agreements that were later signed by the participants to which we turn our attention. The agreements contained an integration clause that provided that the ERIP agreements superseded any prior agreements. Further, whether the ERIP participants were induced into signing the declarations of intent to retire goes to their

fraudulent-inducement claim, for which the court found in favor of the city. The ERIP participants did not challenge that part of the trial court's decision here.

{¶12}    All of the ERIP participants signed identical ERIP agreements. The participants focus on section 3 of the agreement, which provides the following:

> **3. Medical Coverage.** This Agreement shall not affect the manner or type of medical coverage for which Employee is eligible, once retired under CRS. However, all benefits under CRS, medical or otherwise, shall be applied in accordance with the Employee's total service credit, including that earned pursuant to the ERIP.

The trial court concluded, with little discussion, that the ERIP agreement was ambiguous. We disagree.

{¶13}    "Contract terms are ambiguous where the language is susceptible to two or more reasonable interpretations." *Wittstein v. Wittstein,* 12th Dist. Madison No. CA2006-03-013, 2006-Ohio-6707, ¶ 8. "[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). We are unable to discern more than one interpretation of section 3. The section clearly excludes from the agreement the subject of medical coverage for the ERIP participants.

{¶14}    The remainder of the agreement is equally unambiguous. And the import of section 3 is strengthened by reference to other clauses in the agreement. Section 7 provides in part that

> [e]mployee agrees that the benefits afforded under this Agreement constitute the entire consideration provided to Employee in connection with his or her early retirement.

Thus, no additional promises about medical coverage were made by the city. Further, section 9 states that

> [t]his Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof and supercedes (sic) all prior agreements and understandings of the parties hereto. No other representations, agreements, arrangements, or understandings, oral or written, concerning the subject matter of this Agreement shall be valid or binding upon the parties hereto unless specifically expressed in a writing signed by both parties.

{¶15} Taken together, these sections underscore that the subject matter of the ERIP agreement is solely the early-retirement incentive being offered by the city and accepted by the employee. Because the terms of the ERIP agreement were unambiguous, the trial court erred when it considered extrinsic evidence to determine the intent of the parties.

{¶16} Having determined that the ERIP agreement was unambiguous, we turn our attention to the determination of whether the city breached the terms of the agreement. The ERIP participants argue that by excluding them from the provision passed by city council on September 26, which allowed current members of the CRS to maintain their 96/4 medical coverage, the city breached section 3 of the ERIP agreement. The gist of their argument is that the city's action was a breach because the only reason the ERIP participants did not receive the same medical coverage as the current members of CRS was that the ERIP participants had signed the ERIP agreement. Thus, the ERIP participants assert, the ERIP did exactly what section 3 stated it would not—affected the manner and type of coverage for which the participant was eligible.

9

{¶17}    While it is true that the city treated the ERIP retirees differently than other retirees with respect to healthcare benefits, there is nothing in section 3 that prevented it from doing so.  Section 3, rather than delineating an obligation on the part of the city, merely limits the subject matter of the agreement to the early-retirement-incentive program.  As healthcare benefits did not fall within the purview of the agreement, the agreement did not guarantee a certain level of benefits.  Nor does the section speak to the city's authority with respect to retiree healthcare benefits, which this court recently recognized includes its authority to change retiree healthcare benefits. *See Gamel v. Cincinnati*, 1st Dist. Hamilton No. C-110613, 2012-Ohio-5152; Cincinnati Municipal Code 203-121.

{¶18}    Section 3 excluded the subject of medical coverage from the ERIP, and the city made no promises about the healthcare coverage it would provide to the participants.  We therefore conclude that the city did not breach the terms of the agreement.  Rather, it exercised its authority to change the retiree healthcare benefits.  The first assignment of error is sustained.  Disposition of this assignment of error makes the second assignment of error moot.  The judgment of the trial court is reversed and judgment on the ERIP participants' contract claim is entered for the city.

Judgment reversed and judgment entered.

CUNNINGHAM, P.J., concurs.
FISCHER, J., concurs separately.

FISCHER, J., concurring separately.

{¶19}    I concur with the majority's decision.  Based on the unambiguous language in the ERIP agreement, specifically section 9, the city did not breach any contract with the ERIP participants.  I write separately, however, to point out that, troublingly, the city leaders and managers once again did nothing to correct the

participants' misconceptions, which misconceptions resulted from deliberate and repeated assurances made by city employees. *See Gamel v. Cincinnati,* 1st Dist. Hamilton No. C-110613, 2012-Ohio-5152, ¶ 19.

{¶20}   During an information session with employees who had been offered early retirement, John Boudinot, Director of the Cincinnati Retirement System, repeatedly assured the employees that, if they accepted early retirement, they would be treated the same as current retirees:

> MR. BOUDINOT:  You'll have the same benefits as every other retiree.
>
> * * *
>
> AUDIENCE MEMBER: * * * We will be treated as—the same as anybody currently in the system.
>
> MR. BOUDINOT:  Yes.
>
> AUDIENCE MEMBER:  Okay, thank you.
>
> MR. BOUDINOT:  All the retirees—you'll be just like every other retiree.
>
> AUDIENCE MEMBER:  Just like a person who retired five years ago.
>
> MR. BOUDINOT:  You've got it.

Joint Exhibit 20, Early Retirement General Information Session of July 10, 2007, p. 9, 18.

{¶21}   The city's assurances, through Mr. Boudinot, were echoed by other CRS employees in individual meetings with the participants.  Because such assurances, and the unwillingness of the city leaders and managers to correct these misperceptions, are not actionable in a contract claim, I concur.  That does not, however, make the city's repeated acts proper.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

11