[Cite as *Brendamour v. Indian Hill*, 2022-Ohio-4724.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


DOUGLAS BRENDAMOUR,                    :       APPEAL NOS. C-210504
                                                           C-210516
BETH BRENDAMOUR,                       :                   C-210517
                                               TRIAL NO. B-1705623
BETH K. BRENDAMOUR, Trustee,           :

DOUGLAS P. BRENDAMOUR, Trustee,        :       *O P I N I O N.*

  and                                  :

TOM KEREIAKES, Trustee,                :

    Plaintiffs-Appellants/Third-Party      :
    Defendants-Appellees/Third-
    Party Cross-Appellants,                :

  vs.                                  :

THE CITY OF THE VILLAGE OF             :
INDIAN HILL,
                                       :
    Defendant-Appellee,
                                       :
  and
                                       :
ERIC S. KAHN,
                                       :
ALLISON A. KAHN,
                                       :
ERIC S. KAHN, Trustee,
                                       :
  and
                                       :
ALLISON A. KAHN, Trustee,
                                       :
    Intervening Defendants/Third-
    Party Plaintiffs-Appellants/Third-
    Party Cross-Appellees,                 :

vs.                                                          :

KATHRYN      ANN      WEICHERT      :
KRANBUHL,

  and                                                     :

KATHRYN      ANN      WEICHERT
KRANBUHL, Trustee,                             :

    Third-Party Defendants.                  :

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Reversed in C-210504; Affirmed in C-210516;
                                    Appeal Dismissed in C-210517

Date of Judgment Entry on Appeal: December 29, 2022

*Graydon Head & Ritchey LLP* and *Michael A. Roberts*, for Plaintiffs-Appellants/Third Party Defendants-Appellees/Third-Party Cross-Appellants Douglas and Beth Brendamour, Douglas and Beth Brendamour, Trustees, and Tom Kereiakes, Trustee,

*Frost Brown Todd LLC, Scott D. Phillips* and *Jesse J. Shamp,* for Defendant-Appellee the City of the Village of Indian Hill,

*Law Office of Blake R. Maislin, LLC*, and *Blake R. Maislin*, for Intervening Defendants/Third-Party Plaintiffs-Appellants/Third-Party Cross-Appellees Eric and Allison Kahn, and Eric and Allison Kahn, Trustees.

**Bock, Judge.**

{¶1} These appeals arise from a dispute between neighbors involving the construction of a new house. Intervening defendants/third-party plaintiffs-appellants/third-party cross-appellees Eric and Allison Kahn, and Eric and Allison Kahn, Trustees, (collectively the "Kahns") have appealed in the appeal numbered C-210504 from the entry dismissing their counterclaim, which alleged that plaintiffs-appellants/third-party defendants-appellees/third-party cross-appellants Douglas Brendamour and Beth Brendamour, Douglas and Beth Brendamour, Trustees, and Tom Kereiakes, Trustee, (collectively the "Brendamours") breached a 2003 contract. The Brendamours have appealed in the appeal numbered C-210516 from the entry dismissing their complaint, which asserted that defendant-appellee the City of the Village of Indian Hill ("Village") breached the same contract. In the appeal numbered C-210517, the Brendamours raise only defensive arguments with respect to the appeal numbered C-210504.

{¶2} Upon our review, we determine the trial court erred by dismissing the Kahns' breach-of-contract claim against the Brendamours. But the trial court correctly dismissed the Brendamours' breach-of-contract claim against the Village. Accordingly, we reverse the trial court's judgment in the appeal numbered C-210504 and affirm it in the appeal numbered C-210516. Additionally, because the appeal numbered C-210517 does not raise any assignments of error, we dismiss it.

## Allegations and Procedural Background

{¶3} The Kahns sought to construct a new house on a plot of land (the "Kahn Property") located in the Village on "Holly Hill," a roadway near Park Road. Though

3

the Kahn Property previously may have had a Park Road address, as explained below, the Kahn Property does not abut Park Road.

<u>The Brendamours and the Kahns' predecessor-in-interest entered into a contract</u>

**{¶4}** The Kahn Property was divided from a ten-acre lot previously owned by Worthy Tuttle. In 2003, Tuttle, the Brendamours, and the Village entered into an agreement ("the 2003 Agreement") that required splitting the ten-acre lot. Tuttle retained a roughly five-acre, lightning-bolt shaped lot that became the Kahn Property. The Brendamours, whose property on Park Road adjoins the Kahn Property to the south, purchased a portion of the other five-acre lot and restricted the rest with a conservation easement.

**{¶5}** As part of the transaction memorialized in the 2003 Agreement, Tuttle agreed to "release" an access easement to Park Road benefiting what became the Kahn Property and burdening the property acquired by the Brendamours, retaining for the Kahn Property solely an easement to Park Road "for existing utilities." According to the allegations, the release of the easement was not properly recorded and did not appear in the chain of title for the Kahn Property. The 2003 Agreement did not specify responsibility for recording the release. It assigned the Village "the cost of document preparation for the Closing" to effectuate the 2003 Agreement.

**{¶6}** The 2003 Agreement, by an incorporated amendment, contained the following provision ("future-disputes provision") relating to future disputes concerning "inadequate lot frontage" on the lot that became the Kahn Property:

> Brendamour, Trustee and Bliss covenant and agree with Tuttle, her
> heirs, administrators, successors and assigns, that, as long as any
> proposed addition to the existing residence located on the Tuttle

4

Property, or alternatively the demolition of the existing residence and the construction of a new residence on the Tuttle Property, otherwise conforms with the Village's Zoning Ordinance, Brendamour, Trustee, and Bliss will not oppose such use on the basis of inadequate lot frontage. If Brendamour, Trustee, or Bliss breaches this covenant, the breaching party or parties shall be responsible for all expenses, including reasonable attorneys' fees, which Tuttle or her heirs, administrators, successors, or assigns must expend in order to battle the opposition.

Disputes arose when the Kahns planned to build a new house

{¶7} The Kahns purchased the Kahn Property and began planning to build a house to replace a structure that had been destroyed by fire years earlier. In 2017, they filed an application ("Kahns' application") with the Village planning commission to construct the new house. The Kahns' application included a site plan with a house that fronted Park Road. As such, the Village's zoning ordinance "front lot line" requirements would be based on access to the property through Park Road, despite the 2003 Agreement releasing the ingress/egress access easement to Park Road. The Village required the Kahns' application to be reviewed by the planning commission.

{¶8} The planning commission heard the Kahns' application in March and May 2017. During this time, they considered an alternative site plan with Holly Hill as the "front lot line." According to the Kahns' complaint, the Brendamours opposed the Kahns' application "on the basis of lot frontage" and for other reasons, including the selection of the "rear lot line" for the oddly-shaped property.

5

{¶9} The planning commission unanimously approved the application for the alternative site plan with Holly Hill as the front lot line. In its June 2017 written decision, the planning commission found that the Kahn Property did not abut Park Road and that the access easement had been vacated in 2003. Further, the planning commission found that the Holly Hill site plan was "consistent" with the Village's zoning requirements, including the minimum lot frontage width of 250 feet and the "Rear Lot Line" requirements.

{¶10} The Brendamours and Kathryn Ann Weichert Kranbuhl, another neighbor who had opposed the Kahns' application, appealed the planning commission's decision to the Village Council. But in September 2017, the Village Council passed a resolution unanimously approving the planning commission's decision. The Brendamours and Kranbuhl appealed that decision to the Hamilton County Court of Common Pleas.

{¶11} About a month later, the Brendamours filed a separate civil action in the Hamilton County Court of Common Pleas against the Village, alleging breach of the 2003 Agreement. The Brendamours also sought an order compelling deed reformation.

{¶12} The Village moved to dismiss the complaint on the ground that the Brendamours were merely creating a second front to challenge the Village's decision approving the Kahns' development plans, as the 2003 Agreement did not contain any of the obligations that the Brendamours alleged the Village had breached. Further, as a matter of law, the Village was incapable of effectuating reformation of the deed when it was not a party to the deed. Noting that the Brendamours and Kranbuhl were pursuing an administrative appeal of the zoning decision in the Hamilton County

6

Court of Common Pleas, the Village further requested that the court consolidate the civil action with the administrative appeal of the zoning decision (the "zoning action").

{¶13}  The trial court permitted the Kahns to intervene in the Brendamours' civil action. They filed an answer and counterclaims against the Brendamours, alleging breach of contract, slander of title, and civil conspiracy (the "counterclaim complaint"). The Kahns named Kranbuhl as a third-party defendant in their slander-of-title and civil-conspiracy claims.

{¶14}  The Brendamours moved to dismiss the Kahns' counterclaim complaint and later moved for summary judgment on the breach-of-contract claim related to the future-disputes agreement. In support of summary judgment, they submitted an interlocutory decision of a magistrate in the zoning action, which found error in the zoning proceedings involving the rear lot line set back requirements of the Kahns' application. Taking the position that even if they had raised "inadequate lot frontage" in opposition to the Kahns' application, they were expressly permitted to do so because other aspects of the application failed to conform to the Village zoning ordinance.

{¶15}  Subsequently, the parties filed additional parts of the record from the zoning action. This included the final judgment from this court that upheld the Village's determination approving the Kahns' application because it complied with the Village zoning ordinance. *See Brendamour v. City Council of the Village of Indian Hill*, 1st Dist. Hamilton Nos. C-200023 and C-200026, 2021-Ohio-568.

{¶16}  In August 2021, the trial court heard arguments on the pending motions to dismiss. A month later, the trial court dismissed all counts in the Brendamours' complaint and the Kahns' counterclaim complaint. It specified that it did not consider any documents outside of the complaint or the counterclaim complaint, including this

7

court's final decision in the zoning action. The Brendamours and Kahns both appealed and we consolidated those appeals.[1] The Brendamours, in a single assignment of error, and the Kahns, in two assignments of error, challenge the trial court's dismissal of their breach-of-contract claims under Civ.R. 12(B)(6).

## Standard of Review

{¶17} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *See White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 16 (1st Dist.). When deciding such a motion, the court must accept factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Id*. A court should not dismiss a complaint for failure to state an actionable claim unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling [the plaintiff] to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. This court reviews de novo a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss. *Pitman* at ¶ 16.

## Breach of Contract

{¶18} The elements of a breach-of-contract claim are (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach. *Pitman* at ¶ 37.

{¶19} Ohio courts have recognized that "[i]n addition to a contract's express terms, every contract imposes an implied duty of good faith and fair dealing in the

---

[1] This court by agreed entry dated October 26, 2021, partially dismissed Kranbuhl as an appellee in the appeal numbered C-210504 and dismissed Kranbuhl's cross-appeal in the appeal numbered C-210510 as moot.

performance and enforcement." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 42. "Good faith" refers to an " 'implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.' " *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443-444, 662 N.E.2d 1074 (1996), quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990), quoted in *Lucarell* at ¶ 42. But "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Lucarell* at ¶ 44.

**{¶20}** When a breach-of-contract claim is founded upon a written instrument that is attached to the complaint, the complaint should not be dismissed under Civ.R. 12(B)(6) unless the complaint and the written instrument on their face show to a certainty some insurmountable bar to relief as a matter of law. *See Slife v. Kundtz Properties, Inc.*, 40 Ohio App.2d 179, 186, 318 N.E.2d 557 (8th Dist.1974).

**{¶21}** Contracts are interpreted to carry out the parties' intent, as evidenced by contractual language. *See Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). When a contract is clear and unambiguous, its interpretation is a matter of law, and no issue of fact remains to be determined. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978); *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), paragraph one of the syllabus. Contract terms are deemed ambiguous if they reasonably can be interpreted in multiple ways. *See Bates v. City of Cincinnati*, 2013-Ohio-5893, 7 N.E.3d 521, ¶ 13 (1st Dist.); *Schaffer v. First Merit Bank, N.A.*, 186 Ohio App.3d 173, 2009-Ohio-6146, 927 N.E.2d 15, ¶ 20 (9th Dist.).

## Brendamours Failed to Allege a Breach-of-Contract Claim

**{¶22}** The Brendamours' primary argument in support of reversal on their breach-of-contract claim against the Village relates to the duty of good faith and fair dealing. They argue that the allegations in the complaint would make it reasonable to conclude that the Village breached "the duty of good faith and fair dealing" by failing to act in accordance with the 2003 Agreement's "express terms—preparing and filing the [Park Road Lot] Easement release so that the relevant rights were released and notice of that release would be evidenced from a review of property records."

**{¶23}** But those "express terms" do not exist in the 2003 Agreement. The 2003 Agreement required the Village to (1) accept two conservation easements, (2) contribute to the purchase of certain property and accept approximately 0.45 acres of property into a Green Areas Trust, (3) remove a driveway and plant certain plants on the property subject to the agreement, (4) obtain a boundary survey and legal descriptions from a surveyor licensed in Ohio for the property subject to the agreement, (5) obtain a title examination of the property subject to the agreement, and (6) bear the cost of document preparation regarding the transaction set forth in the agreement. There is no allegation that the Village failed to fulfill these duties.

**{¶24}** The Brendamours are attempting to recover for an alleged breach of an implied duty apart from a breach of the underlying contract, but such cause of action is not recognized under Ohio law. *See Lucarell*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, at ¶ 44.

**{¶25}** The Brendamours' additional arguments in support of a reversal are similarly meritless. Those arguments conflate the Village's responsibilities for zoning review and approval with contract duties. Accepting the factual allegations in the

10

complaint as true and drawing all reasonable inferences in the Brendamours' favor, we hold that the Brendamours failed to state a cause of action for breach of contract against the Village. The trial court did not err when it dismissed that claim. Accordingly, we overrule the Brendamours' sole assignment of error.

### Dismissal of the Kahns' Breach-of-Contract Claim

{¶26} The Kahns' breach-of-contract claim relates to the future-disputes provision in the 2003 Agreement. According to the Kahns' allegations, the Brendamours breached the express terms of the future-disputes provision and violated the duty of good faith and fair dealing when they opposed the Kahns' application on the "basis of lot frontage" and encouraged others to do so. These allegations were supported by exhibits attached to and incorporated into the Kahns' answer and counterclaim complaint.

{¶27} The trial court essentially construed the future-disputes provision as allowing the Brendamours to contest the Kahns' application in the zoning action based on inadequate lot frontage without breaching the future-disputes provision as long as the Brendamours also raised additional reasons for contesting it. And because the Brendamours raised additional grounds along with the lot-frontage challenges, the trial court determined the Kahns' allegations were insufficient to state a claim upon which relief could be granted.

{¶28} We disagree with the trial court's interpretation of the future-disputes provision, which is akin to a fee-shifting agreement. The provision provides that "as long as any proposed * * * construction of a new residence on the [] Property * * * otherwise conforms with the Village's Zoning Ordinance, [the] Brendamour[s] * * * will not oppose such use on the basis of inadequate lot frontage" and that if the

11

Brendamours "breach[] this covenant," they "shall be responsible for all expenses, including reasonable attorneys' fees, which [the current owner] or her * * * successors * * * must expend in order to battle the opposition."

{¶29} When read in its entirety, the only reasonable construction of the provision affords the Kahns the right to recover expenses, including "reasonable attorney fees," incurred and proved for defending based on inadequate lot frontage, if at the conclusion of the zoning action the Kahn application is found to otherwise conform with the Village's zoning ordinance.

{¶30} The Brendamours also argue that this court should not reinstate the Kahns' claim because the Kahns cannot prove any damages caused by the Brendamours' alleged breach of the future-disputes provision in the 2003 Agreement. They assert that the expenses and attorney fees the Kahns incurred to "battle" their challenge based on inadequate lot frontage were also necessarily expended to respond to their other zoning-ordinance-based challenges and Kranbuhl's lot-frontage opposition.

{¶31} At this stage in the proceedings, we cannot say as a matter of law that there is no set of facts under which the Kahns would be entitled to relief against the Brendamours. On remand, the Kahns will have to prove (among other things) damages that were caused by any breach of the future-disputes provision.

{¶32} We hold that the Kahns sufficiently stated a cause of action for breach of the future-disputes provision. Accordingly, we conclude that the trial court erred when it dismissed the Kahns' breach-of-contract counterclaim under Civ.R. 12(B)(6). The Kahns' first assignment of error is sustained.

12

## Civ.R. 12(B)(6) Tests the Sufficiency of the Complaint

**{¶33}** The Kahns' second assignment of error asserts that the trial court erred by failing to consider the final decision in the zoning case as "substantial, if not conclusive evidence" that the Brendamours had breached the future-disputes provision in the 2003 Agreement, thereby entitling the Kahns to damages and attorney fees. This argument is misplaced considering the procedural posture of this case. The trial court ruled on the sufficiency of the allegations, not the merits of the claim. The Kahns' assignment of error thus lacks merit, and we overrule it.

## Conclusion

**{¶34}** The trial court erred by dismissing the Kahns' breach-of-contract claim against the Brendamours with respect to the future-disputes provision in the 2003 Agreement. The trial court did not err by dismissing the Brendamours' breach-of-contract claim against the Village. Consequently, we affirm the trial court's judgment in the appeal numbered C-210516, reverse it in the appeal numbered C-210504, and remand the case for further proceedings consistent with the law and this opinion. The appeal numbered C-210617 is dismissed.

Judgment accordingly.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.