**[Cite as *Hull v. Poulos*, 2023-Ohio-4500.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BENNIE A. HULL, | : | APPEAL NO. C-230063 |
| | | TRIAL NO. A-2003579 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| MATTHEW POLOUS, | : | |
| | | |
| FIDANT WEALTH PARTNERS, | : | |
| | | |
| and | : | |
| | | |
| AMERIPRISE FINANCIAL | : | |
| SERVICES, LLC, | | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 13, 2023

*Hochscheid Law* and *Tabitha M. Hochscheid*, for Plaintiff-Appellant,

*DeWitt Law, LLC*, and *Michael W. DeWitt*, for Defendants-Appellees.

**BOCK, Judge.**

**{¶1}** Toward the end of George Hill's life, he appointed his cousin, plaintiff-appellant Bennie Hull, to be his power of attorney and executor of his estate. Hull alleged that he relied on advice from Hill's financial professionals in the course of his actions as George's agent, which ultimately led to his being removed as executor of the estate and becoming liable for thousands of dollars. Hull sued defendants-appellants Matt Poulos, Ameriprise Financial Services LLC ("Ameriprise"), and Fident Wealth Partners (collectively, "the Advisors"), asserting professional negligence. The trial court granted the Advisors' Civ.R. 12(B)(6) motion, finding that Hull lacked standing.

**{¶2}** Hull appeals, arguing that the Advisors owed Hull an independent duty of care. But because the Advisors owed a duty to Hull only in his capacity as George's power of attorney, rather than to Hull individually, Hull could not show that the Advisors owed him a duty of care. Therefore, he cannot sustain his negligence action. We overrule Hull's sole assignment of error and affirm the trial court's judgment.

## Facts and Procedure

**{¶3}** The allegations in Hull's complaint, which we accept as true, assert that in the last ten years of George's life, Hull was his primary caretaker. George appointed Hull as his power of attorney ("POA") in November 2007. Hull remained George's POA until George died.

**{¶4}** The 2007 POA allowed Hull to make changes in George's investments, as long as they conformed with George's estate plans. George also named Hull as the executor of his estate in George's various wills.

**{¶5}** George had several Ameriprise annuities accounts. Poulos, an Ameriprise employee, served as George's financial advisor. Poulos advised Hull in his

capacity as George's POA. As George's health declined, Poulos began to communicate exclusively with Hull about George's accounts.

{¶6} Per Ameriprise's policy, Poulos requested a copy of George's will to ensure that his Ameriprise beneficiary designations matched the will. Hull provided Poulos with a copy of George's will. Ameriprise determined that George's beneficiary designations on his Ameriprise accounts had to change so that the designations would be distributed as provided in George's will.

{¶7} Although Hull had been George's POA since November 2007, Ameriprise requested George sign a new power of attorney form in 2016. Ameriprise drafted a durable power of "Attorney for Ameriprise Financial Accounts and Products."

{¶8} After George signed the new POA, Poulos suggested that Hull update the beneficiaries on George's accounts. Poulos prepared for Hull's signature a beneficiary update form changing the Ameriprise account beneficiaries from George's heirs to George's estate.

{¶9} The change in the beneficiary designations from George's heirs to the estate stripped George's daughter, Jacqueline Hill, and George's granddaughter and niece of their inheritances. While the granddaughter and niece were beneficiaries under the previous Ameriprise designation forms, no bequests were made for them in George's will. Jacqueline was to inherit the residuary of the estate after specific bequests were made to George's cousins—including Hull—totaling $800,455.07.

{¶10} But for this change in beneficiary designation there would have been no assets to probate. Without these beneficiary changes, the money in George's accounts

would have passed to George's relatives based on percentages as provided in the Ameriprise beneficiary designation forms.

{¶11} Following George's death, Hull opened George's estate in the Hamilton County Probate Court. All of George's heirs, including Jacqueline, were notified of the inventory in the estate. After Jacqueline learned about the inventory, she objected and later sued, alleging that Hull took assets that belonged to the estate.

{¶12} The probate court found that the beneficiary changes that Hull made to the Ameriprise accounts, as instructed by the Advisors, amounted to mishandling George's assets.

<u>Hull sued the Advisors and the trial court dismissed his complaint</u>

{¶13} Hull's October 2020 complaint alleged that, absent Poulos's instructions, he would not have changed the Ameriprise beneficiaries.

{¶14} The Advisors filed a motion to dismiss, citing R.C. 2711.01 and arguing that Hull must engage in the arbitration process contained in the Ameriprise financial agreement. The trial court denied the Advisors' motion because Hull was not a party to the Ameriprise financial agreement.

{¶15} The Advisors filed another motion to dismiss, this time under Civ.R. 12(B)(6), arguing that Hull lacked standing as he was not a party to the Ameriprise financial agreement. Hull had interacted with Ameriprise and signed documents solely in his capacity as George's POA, and, later, as executor of George's estate. The trial court granted the motion, finding that Hull lacked standing.

{¶16} Hull now appeals.

4

**Law and Analysis**

**{¶17}** Hull's single assignment of error asserts that the trial court erroneously granted the Advisors' motion to dismiss. He argues that (1) the trial court failed to accept the complaint's allegations as true and failed to view the facts in the light most favorable to him; (2) Poulos owed Hull a duty, independent of George, under the Uniform Power of Attorney Act; (3) Hull had standing under the exception to the non-economic loss doctrine under the Restatement of the Law 2d, Torts, Section 552 (1979), as adopted in Ohio; and (4) the Ohio Constitution or common law imposed a duty on Poulos because Hull's injury was foreseeable.

**{¶18}** A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *Brendamour v. City of the Village of Indian Hill*, 2022-Ohio-4724, 204 N.E.3d 1085, ¶ 17 (1st Dist.); *see White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 16 (1st Dist.).

**{¶19}** When considering a Civ.R. 12(B)(6) motion to dismiss, the court must accept factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Id*. A court should not dismiss a complaint for failure to state an actionable claim unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling [the plaintiff] to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

A.  Plaintiffs must establish the existence of duty and standing

**{¶20}** To succeed on a negligence claim, a plaintiff must establish the existence of duty, breach of that duty, and damages proximately caused by the breach. *Rieger v.*

*Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 10. Failing to prove any of these elements is fatal to a negligence claim. *Id.*

**{¶21}** A duty is a legal obligation owed to one party by another. *Pauley v. City of Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083, ¶ 21. "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). Generally, absent a relationship between a defendant and plaintiff, the plaintiff cannot establish the existence of a duty. *Perelman v. Meade*, 12th Dist. Warren No. CA2021-06-054, 2021-Ohio-4247, ¶ 20.

**{¶22}** Standing is a jurisdictional requirement that ensures a party is qualified to bring a case—the party must have a sufficient stake in the controversy to obtain judicial resolution of that controversy. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 21-22; *Kormanik, Guardian v. HSBC Mtge.*, 10th Dist. Franklin No. 12AP-18, 2012-Ohio-5975, ¶ 41 ("The doctrine of standing requires a litigant to be in the proper position to assert a claim or seek judicial enforcement of a duty or right.").

**{¶23}** Although this case involves a financial advisor, rather than an attorney, a legal-malpractice action is analogous to this case because Hull sued the Advisors based on damages that he suffered due to allegedly-negligent professional services. And whether a party has standing to bring a malpractice action requires the plaintiff to establish that the defendant attorney owed the plaintiff a duty of care, and thus requires a relationship between the attorney and the plaintiff. *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 10 (Decedent's children, including the estate executor in his individual capacity, did not

have an attorney-client relationship with their mother's attorney and therefore lacked standing to bring a malpractice claim); *see RocketFuel Blockchain Co. v. Ellenoff Grossman & Schole LLP*, S.D.N.Y. No. 21-CV-1764 (VEC), 2022 U.S. Dist. LEXIS 4638, 12 (Jan. 7, 2022) (An entity had no standing to bring a legal-malpractice claim against a law firm with which it had no attorney-client relationship.).

B. The trial court properly dismissed Hull's complaint

{¶24} Hull's first issue for review asserts that the trial court did not accept Hull's asserted facts as true and instead interpreted the probate court's decision. Hull argues that the trial court erroneously found that Hull being removed as executor of the estate by the probate court meant that he lacked standing, which was improper because his complaint asserted that he was damaged individually.

{¶25} This court reviews a trial court's dismissal under Civ.R. 12(B)(6) de novo. *State ex rel. Brown v. Nusbaum,* 152 Ohio St.3d 284, 2017-Ohio-9141, 95 N.E.3d 365, ¶ 10. Therefore, we have reviewed Hull's allegations and consider his claim with no deference to the trial court's decision. And, after considering only the allegations in Hull's complaint, accepting the allegations in his complaint as true, and drawing all reasonable inferences in Hull's favor, we hold that the trial court properly dismissed Hull's complaint because he failed to establish that the Advisors owed him a duty of care. Therefore, Hull lacked standing to maintain an action against the Advisors.

{¶26} Hull claims that the Advisors' action harmed him individually. But to the extent that a relationship between the Advisors and Hull existed, that relationship was between the Advisors and Hull in his capacity as George's power of attorney. Hull signed the relevant Ameriprise documents in his capacity as George's power of attorney or executor of his estate, not individually. The Advisors never provided any

instruction or advice to Hull in his individual capacity—any advice or instruction was given solely as George's or his estate's agent.

{¶27} The Advisors' only legal duty was owed to George and George's estate. They owed nothing to Hull in his individual capacity. And that lack of duty is fatal to Hull's complaint. Because the Advisors had no legal relationship with Hull individually, they owed him no duty of care. Hull lacked standing to bring his claim.

### C.  The Uniform Power of Attorney Act did not create a duty

{¶28} Hull next argues that the Advisors owed him an independent duty as George's agent under the Uniform Power of Attorney Act.

{¶29} The Ohio Uniform Power of Attorney Act governs power-of-attorney relationships in Ohio. Ohio adopted the Uniform Power of Attorney Act in March 2012. *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, 997 N.E.2d 1254, ¶ 17 (5th Dist.).

{¶30} A "power of attorney" is a writing that grants an agent authority "to act *in the place of the principal.*" (Emphasis added.) R.C. 1337.22(G).  The "principal" is the person who grants an agent authority to perform acts. R.C. 1337.22(I). An "agent" is the person to whom the principal has granted authority "to act for a principal." R.C. 1337.22(A). Agents' actions are attributed to the principal—not the agent—because the agent is "standing in the shoes" of the principal. *G.R.P.L. Enters. v. Sethi*, 7th Dist. Mahoning No. 09 MA 205, 2010-Ohio-6513, ¶ 14; *see First Natl. Bank of New Bremen v. Burns*, 88 Ohio St. 434, 441, 103 N.E. 93 (1913).

{¶31} Hull argues that the Advisors owed him the same duty as George. He provides no authority—and this court could find no authority—suggesting that a third party owes an individual duty to the holder of a POA. This is because those holding a POA do not act as individuals—instead, they act solely on behalf of their principals.

8

**{¶32}** Any advice provided to Hull or interactions between the Advisors and Hull were, legally, advice to and interactions with George. Hull was simply standing in George's shoes. Thus, the Ohio Uniform Power of Attorney Act does not create an individual duty on the Advisors to Hull.

### D. Hull did not allege negligent misinformation

**{¶33}** Hull argues that he has standing to maintain his action under Section 552's exception to the noneconomic-loss doctrine, as adopted by Ohio. That doctrine "recognizes professional liability, and thus a duty in tort, only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business." *Corporex Dev. & Constr. Mgt. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 9, citing Restatement of the Law 2d, Torts, Section 552 (1979), and *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 156, 436 N.E.2d 212 (1982).

**{¶34}** Even if Hull could sustain a negligent-misinformation claim, he failed to allege a negligent-misrepresentation claim. His complaint alleges only negligence. Hull cannot succeed on a claim that he failed to make at the trial level.

### E. Neither common law nor the Ohio Constitution creates a duty

**{¶35}** Finally, Hull asserts that the Ohio Constitution and common law imposed a duty on the Advisors because his injury was foreseeable. As discussed above, the Advisors did not owe Hull any individual duty. The Advisors only owed George a duty, and any duty owed to Hull was solely in his capacity as George's POA.

**{¶36}** We overrule Hull's sole assignment of error.

## Conclusion

**{¶37}**  Hull cannot establish that the Advisors owed him any legal duty in his individual capacity. Instead, the Advisors owed a duty solely to George. Hull simply stood in George's shoes. Because Hull cannot establish the existence of a duty from the Advisors to him individually, we overrule his assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.